UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS' HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VORTEX MARINE CONSTRUCTION INC.,<br><br>Defendant. | Case No. 17-cv-03614-KAW<br><br>**ORDER TEMPORARILY GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Re: Dkt. No. 23 |

On June 22, 2017, Plaintiffs filed the instant case against Defendant Vortex Marine Construction, Inc., alleging that Defendant failed to pay contributions for hours worked by its employees, as required by the Bargaining and Trust Agreements and the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶¶ 15, 20.) After Defendant failed to answer the complaint, default was entered on August 29, 2017. (Dkt. No. 10.)

Defendant now moves to set aside the entry of default. (Def.'s Mot., Dkt. No. 23.) Upon consideration of the parties' filings, as well as the arguments presented at the April 19, 2018 hearing, and for the reasons stated below, the Court TEMPORARILY GRANTS Defendant's motion to set aside entry of default, CONDITIONED on payment of Plaintiffs' attorney's fees and provision of the past-due contribution reports.

## I. BACKGROUND

On June 22, 2017, Plaintiffs filed this ERISA case against Defendant. (Dkt. No. 1.) Defendant was served with the complaint by substitute service; the papers were left with a manager at Defendant's office on July 14, 2017, and a copy of the complaint and summons were mailed to Defendant's office on July 17, 2017. (Dkt. No. 8.)

On July 17, 2017, Plaintiffs' counsel received an e-mail from Kevin Dow. (Minser Decl. ¶ 2, Dkt. No. 32; *see also* Minser Decl., Exh. A.) Mr. Dow stated that he was "the CFO for Vortex Marine Construction and am in receipt of the subject Summons." (Minser Decl., Exh. A.) Mr. Dow stated that Defendant "prefers to resolve the issue without further legal escalation," and asked how the case could be "resolved without escalating the legal channels." (*Id.*) Plaintiffs' counsel responded by identifying the amounts owed by Defendant and the option of entering into a payment plan. (Minser Decl. ¶ 3.)

Defendant did not file an answer to the complaint. On August 23, 2017, Plaintiffs moved for entry of default. (Dkt. No. 9.) On August 29, 2017, the Clerk entered default as to Defendant. (Dkt. No. 10.)

On September 13, 2017, Plaintiffs' counsel had a phone call with Blaise Fettig, Defendant's CEO. (Minser Decl. ¶ 4; Fettig Decl. ¶ 2, Dkt. No. 24.) During this call, Mr. Fettig asked what the status of the litigation was. (Minser Decl. ¶ 4.) Plaintiffs' counsel explained that Defendant was in default, and that Plaintiffs would pursue default judgment if the parties could not resolve the case. (Minser Decl. ¶ 4.) Throughout September 2017, Plaintiffs' counsel continued to communicate with Defendant regarding payment plan terms, including e-mailing Mr. Fettig and telephone calls with Defendant's representative, Mike Silva. (Minser Decl. ¶ 5.) The last communication appears to be from October 20, 2017, when Plaintiffs' counsel sent Mr. Fettig and Mr. Silva an e-mail with proposed terms of a payment plan. (Minser Decl. ¶ 6.) Neither Mr. Fettig nor Mr. Silva responded. (Minser Decl. ¶ 6.)

On January 3, 2018, Plaintiffs' counsel received a call from Mr. Fettig. (Minser Decl. ¶ 7.) Mr. Fettig asserted that he intended to make a significant payment toward the amount owed in mid- to late- February, and requested that Plaintiffs delay filing a motion for default judgment. Plaintiffs' counsel stated that they could not delay due to the large amount owed and the status of the litigation. On February 6, 2018, Plaintiffs filed their motion for default judgment. (Dkt. No. 15.)

On February 14, 2018, Defendant's counsel informed Plaintiffs' counsel that Defendant wanted to resolve the amounts due and requested that the motion for default judgment be

1 postponed. (Minser Decl. ¶ 9.) Plaintiffs' counsel responded that they had already offered payment plan options, which were declined. Further, because of the amounts owed, Plaintiffs were not willing to postpone the motion. Plaintiffs' counsel indicated that Defendant could, however, propose a lump sum payment offer or request a payment plan. Defendant did neither.

On February 20, 2018, Defendant filed an opposition to Plaintiffs' motion for default judgment, as well as the instant motion. (*See* Dkt. No. 26.) In support of the motion to set aside entry of default, Mr. Fettig provided a declaration stating that "[d]ue to the press of other business and the negligence of a former employee, Kevin Dow, [he] did not receive actual notice of the summons in this case until after the Court had already entered default against [Defendant]." (Fettig Decl. ¶ 3.) Mr. Fettig further asserted that around September 2017, he "began investigating other concerns [he] had with Mr. Dow's performance for the company and then happened upon notice of this proceeding." (Fettig Decl. ¶ 3.)

On March 6, 2018, Plaintiffs filed an opposition to the motion to set aside entry of default. (Plfs.' Opp'n, Dkt. No. 31.) Plaintiffs noted that Defendant had failed to provide contribution reports for November 2017 through January 2018, and had failed to make any payments on its account since the motion for default judgment was filed. (Minser Decl. ¶ 10.) On March 13, 2018, Defendant filed its reply. (Def.'s Reply, Dkt. No. 33.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) permits the Court to "set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In determining "good cause," the Court typically considers three factors:

> (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party.

*United States v. Signed Personal Check No. 730 of Yurban S. Mesle (Mesle)*, 615 F.3d 1085, 1091 (9th Cir. 2010). Because this standard "is disjunctive, . . . a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* At the same time, the Ninth Circuit has long emphasized that "judgment by default is a drastic step appropriate

3

only in extreme circumstances; a court should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Moreover, while the same "good cause" test applies to motions seeking relief from entry of default under Rule 55(c) and default judgment under Rule 60(b), "the test is more liberally applied in the Rule 55(c) context . . . because . . . there is no interest in the finality of the judgment with which to contend." *Mesle*, 615 F.3d at 1091 n.1 (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)).

### III. DISCUSSION

#### A. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (internal quotation omitted), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147-50 (2001). To be "intentional," however, the "movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Mesle*, 615 F.3d at 1092; *see also TCI Grp. Life Ins. Plan*, 244 F.3d at 698 ("a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond").

Here, Defendant asserts that its failure to respond was not culpable because its CFO received notice of the complaint, but apparently failed to inform the CEO. (Def.'s Mot. at 3; *see also* Def.'s Reply at 2.) Defendant acknowledges in its reply that Mr. Dow was the CFO, but argues that he was terminated afterwards, and that the CEO did not discover that the case had been filed until after entry of default. (Def.'s Reply at 2; Fettig Decl. ¶ 3.) Plaintiffs, in turn, argue that Defendant's officer did receive the summons and complaint, and points to *Board of Trustees v. Westech Roofing*, in which the district court declined to vacate the default entered. (Plf.'s Opp'n at 12-13.)

In *Westech Roofing*, the district court found that the defendant's conduct was culpable because the complaint was personally served on the defendant's agent of service, and then was

"misplaced or discarded." Case No. 12-cv-5655-JCS, 2014 WL 46633, at *1 (N.D. Cal. Jan. 6, 2014). The district court also noted that the defendant failed to assert that it was unaware of the action, but had instead stated that "after it misplaced or threw away the complaint, it simply 'forgot about it.'" *Id.* Significantly, the district court emphasized the "troubling" history of litigation between the two parties, including that the plaintiffs had filed at least eight actions against the defendant to enforce its benefit obligations. *Id.*

The Court finds that the defendant's conduct, while arguably irresponsible, does not rise to the level of culpability, *i.e.*, being in bad faith. While Defendant's officer did receive the summons and complaint prior to the entry of default, it appears that Defendant's failure to respond was due to a breakdown in internal communications rather than a deliberate decision not to answer with the "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Mesle*, 615 F.3d at 1092. Moreover, this case is distinguishable from *Westech Roofing*, where the defendant not only received the complaint and summons, but had a history of litigation with the plaintiffs, including eight prior suits. *See* 2014 WL 46633, at *1. Based on that, the district court could reasonably conclude that the failure to answer was in bad faith, as the defendant had a long history of noncompliance with its contractual obligations. *See id.* at *2. By contrast, the instant case has no such additional "troubling" facts that would suggest that the failure to answer was deliberate.[1] Taking into consideration the Ninth Circuit's stated preference to decide cases on their merits, rather than on default, the Court finds that this factor weighs in favor of setting aside entry of default.

### B. Meritorious Defense

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Grp.*, 244 F.3d at 700. This burden "is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094; *see also id.* (explaining the "minimal nature of the burden"). Instead, "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts

---

[1] While Plaintiffs also point to Defendant's failure to move to set aside the default or otherwise respond to the pending litigation even after it learned of this case, these actions occurred *after* Defendant's initial failure to answer, which in turn led to the entry of default. (*See* Plfs.' Opp'n at 12-14.)

5

that, if true, would constitute a defense . . . . *Id.*

Here, Defendant argues that it has a meritorious defense to portions of the alleged debt. (Def.'s Mot. at 4.) Specifically Defendant challenges: (1) the ability to collect amounts owed after the complaint was filed; (2) the use of estimates rather than the sums actually owed, and (3) the legality of the 12% interest rate. (*Id.*; *see also* Def.'s Reply at 3.)[2] Plaintiffs correctly respond that courts have allowed ERISA plaintiffs to recover additional contributions and related amounts due that arose during the course of litigation, that Plaintiffs are authorized to estimate contributions where Defendant failed to submit a contribution report, and that Plaintiffs only seek a 10% interest rate. (Plf.'s Opp'n at 15, 17.)

Again, the Ninth Circuit has emphasized that the burden to establish a meritorious defense is "minimal." *TCI Grp.*, 244 F.3d at 700. At the very least, there appears to be a dispute about whether the Dredging Agreements permit a 10% or 12% interest rate. At the hearing, Plaintiffs also argued that the Dredging Agreements are in fact separate from the applicable trust fund agreements. Such matters go to the merits of the case, and should not be decided on a motion to set aside default. The Court, therefore, finds that this is sufficient to satisfy the second factor. While Plaintiffs suggest that the Court set aside default only as to specific issues raised by Defendant, Plaintiffs cite no authority that supports setting aside default on a piecemeal basis. The Court declines to do so, and concludes that this factor weighs in favor of setting aside entry of default.

### C. Prejudice

Finally, the parties dispute whether Plaintiffs would be prejudiced if the entry of default is set aside. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, the standard is whether plaintiff's ability to pursue his claim will be hindered." *TCI Grp. Life Ins. Plan*, 244 F.3d at 701 (internal quotation omitted).

---

[2] In its initial motion, Defendant raised additional arguments, including that Plaintiffs erroneously sought 20% liquidated damages rate and a statute of limitations issue. (Def.'s Mot. at 4.) Defendant does not raise the liquidated damages issue in its reply, and appears to concede that there is no statute of limitations problem. (Def.'s Reply at 3.)

United States District Court
Northern District of California

1    Here, Plaintiffs argue that they will be prejudiced because they have "expended a great
2 amount of resources toward resolving this dispute," and that setting aside default would "allow
3 Defendant to avoid paying what it owes in employee benefit contributions." (Plf.'s Opp'n at 19.)
4 With respect to the latter, Plaintiffs do not explain why Defendant will be able to avoid paying
5 employee benefit contributions; if Plaintiffs win on the merits, Defendant will be required to make
6 the payments it has allegedly failed to make.

As to Plaintiff's argument that it has expended significant resources in this case, the Ninth Circuit has recognized that the district courts have discretion to place conditions on the setting aside of a default, in order to rectify any prejudice suffered by the non-defaulting party as a result of the default. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydroelec.*, 854 F.2d 1538, 1546 (9th Cir. 1988). Several cases have conditioned the setting aside of the entry of default on payment of attorney's fees, particularly when the court found that the defendant's behavior, while not culpable, was problematic. *See Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 698 (S.D.N.Y. 1986) (requiring payment of attorney's fees and costs where there was a one-year delay because the defendant's attorneys ignored the complaint and assumed that management would handle it); *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 418-19 (E.D. Penn. 1981) (requiring payment of attorney's fees and costs where the defendant's behavior was "cavalier"); *E. & J. Gallo Winery v. Cantine Rallo, S.P.A.*, 430 F. Supp. 2d 1064, 1094 (E.D. Cal. 2005) (requiring payment of attorney's fees and costs prior to the defendant informing the plaintiff of its intent to defend where the defendant received actual notice of the lawsuit but failed to recognize the need to respond to the complaint).

The Court finds that this factor favors setting aside entry of default, but conditioned on Defendant paying part of Plaintiffs' attorney's fees because Defendant's behavior after entry of default unduly increased the costs of litigation to Plaintiffs. Specifically, despite knowing of the entry of default in September 2017, Defendant failed to move to set aside entry of default for nearly five months. (*See* Fettig Decl. ¶ 3; Minser Decl. ¶ 5.) Instead, Defendant only moved to set aside entry of default *after* Plaintiffs had already filed the pending motion for default judgment due to Defendant's failure to respond to Plaintiffs' efforts to settle the case. (*See* Minser Decl. ¶¶

6-9.) Thus, Defendant's actions directly resulted in Plaintiffs incurring attorney's fees that were otherwise avoidable if Defendant had timely moved to set aside entry of default.

Under these circumstances, the Court finds it appropriate to condition setting aside entry of default on the payment of Plaintiffs' attorney's fees incurred between September 13, 2017 -- when Defendant's CEO was informed of the default -- and the April 19, 2018 hearing. At the hearing, Defendant requested that it not pay attorney's fees related to Plaintiffs' opposition to the instant motion because their motion was meritorious. The Court finds, however, that Defendant's delay in filing the motion to set aside entry of default likely resulted in Plaintiffs opposing the motion to set aside to begin with, due to Defendant's failure to respond to Plaintiffs' settlement offer or make payments in the interim. Further, courts have routinely required the payment of attorney's fees associated with a motion to set aside entry of default as a condition for granting the motion. *E.g.*, *Leadership Studies, Inc. v. Readytomanage, Inc.*, No. 2:15-cv-9459-CAS (AJWx), 2016 WL 4425713, at \*8 (C.D. Cal. Aug. 16, 2016); *Coen Co. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 508 (N.D. Cal. 2015); *Bernal v. Rodriguez*, Case No. 5:16-cv-152-CAS(DTBx), 2016 WL 4267942, at \*4 (C.D. Cal. Aug. 9, 2016); *Ocwen Loan Servicing, LLC v. Akbari*, No. 2:11-cv-1781-LRH-VCF, 2013 WL 5596661, at \*1 (D. Nev. Oct. 10, 2013); *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. at 418-19.

In addition to the payment of attorney's fees, the Court also conditions setting aside entry of default on Defendant's provision of the past due contribution reports to Plaintiffs. *Compare with Nilsson*, 854 F.2d at 1547 (affirming district court's decision conditioning setting aside entry of default on payment of attorney's fees and the defendants responding promptly and completely to all discovery). Notably, Defendant never disputed that it is not required to provide these contribution reports, and indeed complained that Plaintiffs are seeking sums based on estimates rather than the actual amounts due. (*See* Def.'s Mot. at 4; Def.'s Reply at 3.) This condition further mitigates the prejudice to Plaintiffs by allowing both parties to determine the extent of Defendant's liability.

## IV. CONCLUSION

For the reasons stated above, the Court TEMPORARILY GRANTS Defendant's motion to

8

set aside entry of default, CONDITIONED on Defendant paying Plaintiffs' attorney's fees between September 13, 2017 and April 19, 2018, and Defendant providing the missing contribution reports. The parties are ordered to meet and confer within **seven days** of this order, to determine if they can come to an agreement on the amount of attorney's fees.  If the parties are unable to resolve this matter, Plaintiffs are to file a supplemental declaration providing the amount sought, as well as sufficient documentation for the Court to review for reasonableness, within **fourteen days** of this order.  Defendant may file any objections within **seven days** of the filing of Plaintiffs' supplemental declaration.  The Court will then determine the amount Defendant shall pay.  Once Defendant has paid the attorney's fees and provided the missing the contribution reports, the Court will enter an order granting the motion to set aside entry of default.  Failure to satisfy both conditions will result in the motion to set aside entry of default being denied.

IT IS SO ORDERED.

Dated: April 27, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge